GEORGE RINGLER & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8565.    Promulgated March 1, 1928.

*Elliot A. Daitz, C. P. A.,* and *Myle J. Holley, Esq.,* for the petitioner.

*C. H. Curl, Esq.,* for the respondent.

OPINION.

ARUNDELL: Of the amount claimed in 1918 as depreciation on empty beer kegs the respondent allowed $6,498.06, leaving in question here the sum of $10,406.85. Although the deduction was claimed as depreciation, the evidence indicates an attempt to prove an inventory loss rather than depreciation. Petitioner sought to sustain its allegation of error by proving the value of the opening and closing inventories for the year and a showing of how the loss during the year occurred. Its witness admitted that without the corporate books, which were not produced, he could not even approximate the opening inventory and from the evidence it is clear that he estimated the closing inventory. No evidence was offered to prove the cost of the kegs alleged to have been lost, the manner and amount at which they had been theretofore inventoried, or any other factor essential for a proper redetermination of the matter. For lack of proof that error was committed, we must sustain the respondent on this issue.

The amounts paid to employees during the Christmas season of each taxable year, though designated as gifts in the returns, and bonuses in the pleadings, were in reality additional compensation for services rendered, and are therefore deductible as a business expense. See *First National Bank of Rock Rapids, Iowa*, 6 B. T. A. 816, and *McCoy-Brandt Machinery Co.*, 8 B. T. A. 909.

The money paid to the Lager Beer Board of Trade was expended by it and the United States Brewers Association for the benefit of the petitioner. We are of the opinion that the expenditure was for a purpose coming within the provisions of the taxing act allowing a deduction for ordinary and necessary expenses paid or incurred in carrying on a trade or business. See *California Brewing Association*, 5 B. T. A. 347, and *Richmond Hosiery Mills*, 6 B. T. A. 1247.

The 15,764.58 barrels of real beer on hand in barrels at the close of 1919 were inventoried by petitioner at " cost or market, whichever is lower." The market value, which was lower, was determined to be $1 per barrel, and this amount was reported in the income-tax returns of petitioner. On an audit of the return for that year, the unit price was increased to the cost of the goods, $2.30 per barrel, resulting in an addition to the item of $20,493.96, the amount in dispute here. Respondent's action was prompted by the fact that he did not accept petitioner's figure of $1 per barrel as representing the actual market value of the beer.

It was definitely known at the close of 1919 that the beer then on hand was unsalable except through the limited channels provided by the prohibition laws, and that, as a consequence, the goods had greatly depreciated in value. There was no market at that time within the usual acceptation of the term. Where a situation exists such as we have here the general rules for determining market fail to provide a basis for a proper valuation. Prohibition laws curtailing the sale of beer did not render the inventory valueless, but they practically did limit its worth to a salvage value. To require that the goods be returned at cost or on some theoretical market price in excess of its known value would amount to writing into the inventory a value that did not, in fact, exist, and distort the income. No evidence was offered to show what the property would have brought in the market provided by the prohibition laws. Petitioner had a market for the stock within its business, and the property undoubtedly was worth more to it as a brewer of near beer than to any other similar manufacturer. That value it determined from the manufacture of near beer from the stock of real beer to be 77 cents per barrel, which figure we hold should be used for inventory purposes instead of the cost price of $2.30 per barrel used by the respondent.

The issue involving obsolescence arises out of the disallowance of $25,401.59 of the total amount claimed as a deduction because of the abandonment of certain machinery and equipment located in the unit of the plant discontinued in October, 1918. The evidence shows that most of the machinery and equipment was installed in 1876 and 1881 when the buildings were erected. The record not only does not contain a list of such property but it fails to show the time of acquisition of the remainder, including the cost, if obtained after March 1, 1913. The only evidence of March 1, 1913, value of such property as may have been in the buildings on that date was the testimony of an officer of the petitioner corporation. His opinion, that the estimated value of the property at March 1, 1913, was $500,000, was based, in part, upon the fact that machinery was worth and cost

1138

more on that date than it did in 1881. Other evidence submitted by him clearly indicates that he did not know whether all the property on which obsolescence is claimed was in the buildings in 1881 or on March 1, 1913, and on cross examination he admitted he did not know the original cost of the machinery and equipment. For these and other reasons which we deem unnecessary to discuss, we are unable to accept the March 1, 1913, valuation of the witness. In the absence of evidence as to the March 1, 1913, value of the property acquired prior thereto, and the cost of the property acquired subsequent thereto, we must sustain the action of the respondent. *Appeal of Beadleston & Woerz, Inc.*, 5 B. T. A. 165.

The sixth assignment of error covers alleged loss on barroom fixtures in the taxable years. It is probable that the petitioner sustained a loss but we have insufficient evidence before us to determine the extent thereof. The Commissioner's determination is, therefore, approved.

*Judgment will be entered on 10 days' notice, under Rule 50.*